IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY ASBERRY,

        Plaintiff,               No. 2:11-cv-2462 KJM KJN P

    vs.

MATTHEW CATE, et al.,

        Defendants.         FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

        Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983.  This case is proceeding on plaintiff's third amended complaint against defendants Virga, Phelps, McCarval, Bobbala, Nangalama, Wedell, Ali, Elston, Dhillon, Duc, and Chen.[1]  Plaintiff alleges that defendants violated his Eighth Amendment right to be protected from harm caused by another inmate, and that he subsequently received inadequate medical care in violation of the Eighth Amendment.  Plaintiff also includes several state law claims.  (Dkt. No. 55.)  Pending before the court are defendants' motions to

---

[1]  It appears that defendants Elston and Chen were incorrectly named as "Elton," and "Chin," in the third amended complaint.  (Dkt. No. 84 at 1.)  Defendant Cate and plaintiff's retaliation claims were dismissed on September 27, 2012.  (Dkt. No. 78.)

1  dismiss these claims based on a failure to first exhaust administrative remedies (except as to

2  defendant Phelps), and failure to plead facts sufficient to state a claim for relief under Federal

3  Rule of Civil Procedure 12(b)(6), based on plaintiff's alleged failure to comply with the

4  California Government Tort Claims Act.  After careful review of the record, the undersigned

5  concludes that defendants' motions to dismiss should be granted in part, and denied in part.

6  II.  Plaintiff's Third[2] Amended Complaint

7          Plaintiff's claims arise from a cell move on January 25, 2010, and plaintiff's claim

8  that he was assaulted by his new cellmate, inmate Wilson, the following day, during which

9  plaintiff suffered injuries to his back and neck.[3]  (Dkt. No. 49.)  Plaintiff claims that (a) defendant

10  Elston failed to protect plaintiff by bringing inmate Wilson to plaintiff's cell on January 25,

11  2010, and ordering plaintiff to accept Wilson as his cellmate or plaintiff would face disciplinary

12  action; (b) defendant McCarvel failed to protect plaintiff from inmate Wilson's attack on January

13  26, 2010; (c) defendant Virga failed to protect plaintiff by improperly classifying inmate Wilson;

14  and (d) defendant Chen failed to protect plaintiff because he misdiagnosed Wilson, and it was

15  defendant Chen's evaluation of inmate Wilson that eventually led to plaintiff being housed with

16  inmate Wilson, resulting in plaintiff's injuries (dkt. no. 93 at 6).

17          Plaintiff alleges that defendant Dr. Bobbala examined plaintiff in February of

18  2010, by punching and chopping plaintiff in the back, and attempting to bend plaintiff over, all

19  while asking plaintiff "does that hurt?," and without giving plaintiff any medical treatment,

20  except for ordering an x-ray.  (Dkt. No. 49 at 9-10.)  On March 30, 2010, plaintiff claims his

21  back went out, but all defendant Dr. Nangalama did was ask a few questions, and prescribed

22

23      [2]  Although plaintiff entitled his filing as a "Second Amended Complaint," plaintiff first
24  amended his complaint on November 21, 2011 (dkt. no. 12), and filed a second amended
    complaint on December 1, 2011 (dkt. no. 13).

25      [3]  In the third amended complaint, plaintiff does not challenge the subsequent rules
    violation report No. C10-01-033 (hereafter "RVR"), signed on February 5, 2010, or raise due
26  process claims concerning the hearing on the RVR (dkt. no. 80 at 52-55).  (Dkt. No. 49, *passim*.)

1   plaintiff no pain medication.  (Id. at 10.)  On April 9, 2010, plaintiff was seen by defendant Dr.

2   Wedell, who told plaintiff he would need muscle relaxers, physical therapy, and a waist chain

3   chrono.  On September 7, 2010, plaintiff was seen by defendant Dr. Ali, who allegedly told

4   plaintiff that he needed back surgery, but that "it was up to others to order it;" Dr. Ali ordered

5   methadone, an MRI, a back brace, and a wheelchair chrono for plaintiff.  (Id.)  On April 26,

6   2011, plaintiff was seen by defendant Dr. Dhillon for MRI test results; plaintiff alleges Dr.

7   Dhillon would not reveal the MRI results, but instead ordered a second MRI.  On July 12, 2011,

8   plaintiff saw Dr. Dhillon again, and when plaintiff asked him about the MRI results, Dr. Dhillon

9   allegedly told plaintiff that his knee was within normal limits, and that plaintiff had Hepatitis-C.

10   Plaintiff states he did not receive an MRI for his knee and does not have Hepatitis-C.  On

11   October 20, 2011, plaintiff was escorted to medical by Correctional Officer Conely to see

12   defendant Dr. Duc, and obtain the results from the second MRI.  (Id. at 11.)  When plaintiff

13   asked for his results, plaintiff alleges Officer Conely began gesturing to Dr. Duc as if to say

14   "don't tell him the results," and defendant Dr. Duc allegedly told plaintiff that another doctor

15   would give plaintiff the second MRI results.  (Id.)  Plaintiff alleges these medical doctors denied

16   and delayed plaintiff's medical care in violation of the Eighth Amendment.

17   III.  Motions to Dismiss - Failure to Exhaust

18              Defendants claim plaintiff failed to first exhaust his administrative remedies as to

19   all defendants except defendant Phelps.  Plaintiff was informed of the requirements for opposing

20   a motion to dismiss for failure to exhaust administrative remedies on August 20, 2012, and

21   October 30, 2012.  (Dkt. Nos. 63, 84.)  Plaintiff filed oppositions (dkt. nos. 80, 93), and

22   defendants filed replies (dkt. nos. 83, 95.)

23            A.  Legal Standard re Exhaustion

24              The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e

25   to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

26   § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

1  facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

2  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S.

3  516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding conditions of

4  confinement, whether they involve general circumstances or particular episodes, and whether

5  they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

6        Exhaustion of all "available" remedies is mandatory; those remedies need not

7  meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v.

8  Churner, 532 U.S. 731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in

9  grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Booth, 532

10 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative

11 process that could provide some sort of relief on the complaint stated, but no money."  Id. at 734.

12 The fact that the administrative procedure cannot result in the particular form of relief requested

13 by the prisoner does not excuse exhaustion because some sort of relief or responsive action may

14 result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes

15 of exhaustion requirement include allowing prison to take responsive action, filtering out

16 frivolous cases, and creating administrative records).  The Supreme Court has cautioned courts

17 against reading futility or other exceptions into the PLRA exhaustion requirement.  See Booth,

18 532 U.S. at 741 n.6.

19       A prisoner need not exhaust further levels of review once he has either received

20 all the remedies that are "available" at an intermediate level of review, or has been reliably

21 informed by an administrator that no more remedies are available.  Brown v. Valoff, 422 F.3d

22 926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief

23 remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief

24 remained available, whether at unexhausted levels or through awaiting the results of the relief

25 already granted as a result of that process.  Id., at 936-37.

26 ////

1          As noted above, the PLRA requires proper exhaustion of administrative remedies.

2   Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an

3   agency's deadlines and other critical procedural rules because no adjudicative system can

4   function effectively without imposing some orderly structure on the course of its proceedings."

5   Id. at 90-91.  Thus, compliance with grievance procedures is required by the PLRA to properly

6   exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

7   otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.  When the

8   rules of the prison or jail do not dictate the requisite level of detail for proper review, a prisoner's

9   complaint "suffices if it alerts the prison to the nature of the wrong for which redress is sought."

10  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  This requirement is because the primary

11  purpose of a prison's administrative review system is to "notify the prison of a problem and to

12  facilitate its resolution."  Griffin, 557 F.3d at 1120.

13         Non-exhaustion under § 1997e(a) is an affirmative defense which should be

14  brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil

15  Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court

16  may look beyond the pleadings to determine whether a plaintiff exhausted his administrative

17  remedies.  Id.  at 1119-20.

18                    B.  California Prisons' Grievance Procedures

19         California regulations allow a prisoner to appeal any action or decision by a prison

20  official that adversely affects the prisoner's welfare.  Cal. Code Regs. tit. 15, § 3084.1(a).  To

21  exhaust a grievance, an inmate must pursue his appeal through four levels, one "informal" and

22  three "formal."  Id. §§ 3084.5, 3084.1(a).  An inmate must file the initial grievance within 15

23  working days of the action being appealed, and he must file each administrative appeal within 15

24  working days of receiving an adverse decision at a lower level.  Id. § 3084.6(c).

25         At the informal level, an inmate must seek to have the involved prison employee

26  resolve the problem. Id. § 3084.5(a).  If this request is unsuccessful, the inmate must then fill out

1  a "Form 602," the "Inmate/Parolee Appeal Form," describing the problem and action requested.

2  Id. § 3084.2(a).  An "appeals coordinator" at the prison "screen[s]" each appeal before

3  forwarding it on for review on the merits.  Id. § 3084.3(a).  The appeals coordinator may reject,

4  or "screen," an appeal for various reasons, including failure to comply with the 15-day time limit,

5  incompleteness or omission of necessary supporting documents, or failure to attempt to resolve

6  the grievance informally.  Id. §§ 3084.3, 3084.6(c).  When the appeals coordinator rejects an

7  appeal, he must fill out a form that explains why the appeal is unacceptable and instructs the

8  inmate on what he must do to qualify the appeal for processing.  Id. § 3084.3(d).  If it appears

9  from the appeal form that the prisoner has difficulty describing the problem in writing, the

10  appeals coordinator must arrange an interview with the prisoner to help clarify or complete the

11  appeal.  Id. § 3084.3(b)(3).  Once the appeals coordinator allows an appeal to go forward, the

12  inmate must pursue it through three levels of formal review.  Id. § 3084.5.

13              C.  Administrative Appeals

14          Plaintiff filed his original complaint on September 16, 2011, and provided

15  exhibits which the court has reviewed in connection with this motion.  (Dkt. Nos. 1-1, 1-2.)  At

16  the time the underlying claims accrued, plaintiff was housed at California State Prison -

17  Sacramento ("CSP-SAC").  Defendants provided the declaration of J.D. Lozano, Chief of the

18  Office of Appeals for the California Department of Corrections and Rehabilitation ("CDCR").

19  Chief Lozano described the grievance procedure for inmates held in the CDCR, and submitted

20  copies of plaintiff's grievances submitted between January 26, 2010, and September 16, 2011.

21  (Dkt. No. 63-3 at 1-43.)  Defendants also provided the declaration of K. Daly, Appeals

22  Coordinator for CSP-SAC, who described the screening process for appeals, and filed copies of

23  plaintiff's appeals that were screened out during the relevant time frame.  (Dkt. No. 63-4 at 1-

24  21.)  Finally, defendants submitted the declaration of L.D. Zamora, Chief of the Office of Third

25  Level Appeals ("OTLA") for California Correctional Health Care Services ("CCHCS") in

26  Sacramento, California.  (Dkt. No. 63-5 at 1-2.)  Chief Zamora described the procedure for

1    appeals concerning health care, and provided copies of medical appeals filed by plaintiff during

2    the relevant time period.  (Dkt. No. 63-5 at 1-33.)

3              D.  Third Level Appeals

4              As noted above, Chief Lozano provided copies of plaintiff's appeals that were

5    denied at the third level of review.  The court reviewed these appeals[4] and determined that only

6    third level appeals SAC-10-00226 and SAC-10-10-12683 raised claims relevant herein.  (Dkt.

7    Nos. 63-3 at 12-15; 63-5 at 10.)

8                   1.  Appeal SAC-10-00226

9              In appeal SAC-10-00226, signed February 1, 2010, plaintiff sought an

10   investigation into his claims, and to be compensated in some form.  (Dkt. No. 63-3 at 12.)

11   Plaintiff alleged that on January 25, 2010, defendant Phelps made a cell move that resulted in

12   plaintiff being celled with inmate Wilson.  Plaintiff alleged that inmate Wilson suffers from a

13   mental disorder, has an anger problem, and is violent, unclean, and refused to shower.  Plaintiff

14   alleged that inmate Wilson attacked him because plaintiff offered Wilson a bar of soap.  Plaintiff

15   stated that he requested an investigation into why defendant Phelps moved inmate Wilson into

16   plaintiff's cell.  (Dkt. No. 63-3 at 15.)  Plaintiff noted that at 7:00 a.m. on January 26, 2010,

17   while housed in a medical holding cell next to inmate Wilson, plaintiff remarked to defendant

18

19        [4] Appeals SAC-09-01676 and SAC-09-1633 challenged food service issues.  (Dkt. No.
     63-3 at 4-10.)  Appeal SAC-01246 challenged the denial of showers.  (Id. at 17-20.)  Appeal
20   SAC-11-00227 claimed misuse of force by a nondefendant correctional officer on February 7,
     2011.  (Id. at 22-29.)  Appeal SAC-11-00443 challenged the improper turning off of plaintiff's
21   toilet flushing mechanism.  (Id. at 31-34.)  Appeal SAC-00501 challenged an April 9, 2011 cell
     search.  (Id. at 36-43.)  Appeal SAC-11-00417 was a staff complaint against a nondefendant
22   correctional officer on an unspecified date.  (Id. at 16-20.)  Appeal SAC-10-10-12500
     complained of medical care received for itching and scratching.  (Dkt. No. 63-5 at 4-8.)  Appeal
23   SAC-HC-11013255 sought clarification of a comprehensive accommodation chrono issued
     January 18, 2011.  (Id. at 16-20.)  Finally, appeal SAC-10-10-13021 challenged plaintiff's
24   medical treatment for nightmares and PTSD by Dr. Delgado and Dr. Chen.  (Id. at 22-31.)
     However, plaintiff does not name Dr. Delgado as a defendant, and plaintiff does not challenge
25   Dr. Chen's medical care in the third amended complaint.  Rather, plaintiff alleges it was Dr.
     Chen's evaluation that allowed for inmate Wilson to be double-celled, resulting in plaintiff's
26   injuries.  This appeal does not raise such a claim as to Dr. Chen.  Thus, appeal SAC-10-10-13021
     does not serve to exhaust plaintiff's administrative remedies as to Dr. Chen.

Phelps that inmate Wilson should be single-celled.  (Dkt. No. 63-3 at 15.)  Plaintiff alleged

defendant Phelps responded, "I know he (Wilson) should not even be on the mainline with main

population inmates."  (Id.)  Plaintiff claimed this statement "implies that [defendant] Phelps

already knew moving inmate Wilson in the cell with [plaintiff] would be a problem."  (Id.)

In the first level appeal response, Correctional Sgt. Rose summarized plaintiff's

appeal as alleging defendant Phelps housed plaintiff improperly with a cellmate who should have

been on single cell status, and defendant Phelps was aware of this fact.  (Dkt. No. 1-1 at 6.)  Sgt.

Rose noted that during the interview, plaintiff stated that his "main concern was that [defendant]

Phelps housed you with inmate Wilson knowing you were not compatible."  (Id.)  Sgt. Rose

noted that defendant Phelps was interviewed on March 5, 2010, and stated that plaintiff was

housed with Wilson because both were "double-cell cleared and were compatible."  (Id.)

Plaintiff sought a second level review, stating he was dissatisfied with the first

level decision, without specifying any further factual allegations.  (Dkt. No. 63-3 at 13.)

Defendant Virga provided the second level decision, summarizing plaintiff's appeal by

articulating plaintiff's claims set forth in his initial appeal.  (Dkt. No. 1-1 at 8.)  Defendant Virga

reiterated the first level appeal response that both plaintiff and inmate Wilson were cleared for

double-cell housing, and no incompatibility factors were revealed in a records review.  (Id.)

Defendant Virga found that staff acted appropriately.  (Id.)

In seeking third level review, plaintiff stated that the prior reviewers failed to

acknowledge his request for an investigation into plaintiff's issues, "particularly inmate Wilson's

mental health issues, and Wilson's inability to effectively program in the main population as a

double cell status prisoner."  (Dkt. Nos. 63-3 at 13; 1-1 at 3.)

The third level review reiterated plaintiff's claims against defendant Phelps.  The

third level review examiner found that plaintiff provided no credible evidence to substantiate his

claim that CSP-SAC staff knowingly housed him with a violent, mentally ill inmate.  (Dkt. No.

1-1 at 11.)  "Staff attested that both inmates were cleared for double cell housing and there were

no documented incompatibility factors." (Id.)  In connection with plaintiff's claim that Wilson
struck him in the face in response to plaintiff's offer of soap, the examiner noted that plaintiff
failed to advise staff at the time so that Wilson could be removed.  (Id.)

In this appeal, SAC-10-00226, plaintiff does not allege facts concerning or
challenging the January 26, 2010 attack on plaintiff by inmate Wilson, or plaintiff's claim that
defendant McCarvel failed to protect plaintiff.  (Dkt. No. 63-3 at 12-15.)

Defendants contend that this appeal only exhausts plaintiff's claims as to
defendant Phelps, because it fails to allege any wrongdoing on the part of defendant McCarvel,
and was filed prior to any alleged wrongdoing on the part of the other named defendants.

In his opposition, plaintiff claims he did not learn of defendant Virga's
involvement until much later in plaintiff's investigation.  (Dkt. No. 80 at 4.)  Plaintiff states that
although he could not appeal the classification of another inmate, he could include that claim in
appealing the RVR that he claims resulted from defendant Virga's classification of inmate
Wilson, as well as the actions of defendant McCarvel who authored the RVR.  (Id.)  The hearing
on the RVR, postponed pending the district attorney's decision to prosecute, occurred on July 30,
2010.  Plaintiff contends he could not file an appeal until he was found guilty of the RVR, issued
a final copy of the RVR, as well as a 128-G chrono approving the disciplinary process by a
classification committee.  (Id. at 5.)  Plaintiff argues that he did not timely receive a copy of the
final RVR.  (Id.)  On August 18, 2010, plaintiff went before the classification committee, and
submitted his appeal of the RVR on the same day.  (Id. at 6.)  However, the appeal was rejected
based on plaintiff's failure to attach the complete RVR, and plaintiff included too many issues in
one appeal.  (Id.)  Plaintiff alleges he tried on many occasions to obtain a copy of the RVR, but
claims he did not receive a copy until November 1, 2010, and filed his appeal the same day.  (Id.
at 7.)  The appeal was rejected as untimely.  (Id.)  Plaintiff claims these efforts demonstrate that
plaintiff was not allowed to exhaust his claims as to defendants McCarvel and Virga.  (Id. at 9.)
////

1    Plaintiff also argues that appeal SAC-10-00226 exhausts plaintiff's claims against

2    defendants McCarvel, and Virga, but does not explain why.  (Dkt. No. 80 at 24:6-8.)  In his

3    verified supplemental opposition, plaintiff contends that this appeal exhausted his administrative

4    remedies as to defendants Elston and Chen.  (Dkt. No. 93 at 5.)  Although plaintiff did not

5    reference defendant Elston by name in the appeal, plaintiff contends he referenced defendant

6    Elston's actions, which was to tell plaintiff that if he refused a cellmate, he would face a range of

7    disciplinary actions, including placement in administrative segregation.  (Id., citing Dkt. No. 63-3

8    at 14.)  Plaintiff also argues that he did not learn of defendant Chen's involvement until much

9    later.  (Dkt. No. 93 at 6.)  Moreover, plaintiff contends that the CDCR would not process an

10   appeal from a prisoner that revealed information about another inmate's mental health.  (Id.)

11   In reply, defendants argue that appeal SAC-10-00226 does not reference

12   defendant McCarvel's response to the January 26, 2010 alleged cell fight, or defendant Virga's

13   classification of inmate Wilson.  (Dkt. No. 83 at 3.)  Thus, defendants contend this appeal failed

14   to put prison officials on notice of any wrongdoing on the part of defendants McCarvel and

15   Virga.  (Id.)

16   A grievance suffices to exhaust a claim if it puts the prison on adequate notice of

17   the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need

18   only provide the level of detail required by the prison's regulations.  Jones v. Bock, 549 U.S.

19   199, 218 (2007).  The California regulations require only that an inmate "describe the problem

20   and the action requested."  Cal. Code Regs. tit. 15, § 3084.2(a).  Where a prison's regulations are

21   "incomplete as to the factual specificity [required in an inmate's grievance], a grievance suffices

22   if it alerts the prison to the nature of the wrong for which redress is sought."  Griffin, 557 F.3d at

23   1120 (9th Cir. 2009) (internal quotation marks omitted).

24   The court finds that plaintiff's appeal SAC-10-00226 challenged the alleged

25   improper cell move placing inmate Wilson in the same cell as plaintiff on January 25, 2010, and

26   specifically named defendant Phelps.  Plaintiff included language as to defendant Elston that

1   tracks the language contained in the instant complaint.  Plaintiff is not required to name all

2   potential defendants in his administrative grievance.  See Jones, 549 U.S. at 219, citing Johnson

3   v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a

4   grievance is to alert prison officials to a problem, not to provide personal notice to a particular

5   official that he may be sued; the grievance process is not a summons and complaint that initiates

6   adversarial litigation.").  Plaintiff's allegation that he was forced to accept a cellmate or receive

7   disciplinary action was sufficient to put prison officials on notice of plaintiff's allegations.  Here,

8   plaintiff claims that defendant Elston failed to protect plaintiff by forcing him to accept a

9   cellmate or receive disciplinary action.  Thus, defendants' motion to dismiss plaintiff's claim as

10  to defendant Elston should be denied.

11          Plaintiff's allegations as to defendants Virga and Dr. Chen present a closer

12  question.  The Ninth Circuit has explained that a prisoner is not required to allege every fact

13  necessary to prove a legal claim in his administrative appeal.  See Griffin, 557 F.3d at 1120.

14  Instead, "the primary purpose of a grievance is to notify the prison of the problem and facilitate

15  its resolution, not to lay the groundwork for litigation."  Id., 557 F.3d at 1120-21; see also Gomez

16  v. Winslow, 177 F.Supp.2d 977, 983, 985 (N.D. Cal. 2001) (California prisoner need not provide

17  prison officials with a "preview of his lawsuit by reciting every possible theory of recovery or

18  every factual detail that might be relevant."); Irvin v. Zamora, 161 F.Supp. 2d 1130, 1134-35

19  (S.D. Cal. 2001) (holding that so long as the plaintiff's grievance "present[s] the relevant factual

20  circumstances giving rise to a potential claim," the basic purposes of the exhaustion requirement

21  are fulfilled).

22          Here, defendants are correct that plaintiff did not specifically challenge defendant

23  Virga's classification of inmate Wilson for double cell housing, and did not argue that inmate

24  Wilson's psychiatrist misdiagnosed Wilson, or improperly evaluated Wilson to find it

25  appropriate for Wilson to be double celled.  However, plaintiff noted that inmate Wilson had a

26  mental disorder, and asked prison officials to investigate why defendant Phelps placed Wilson in

11

plaintiff's cell.  In the first level review, the summary of the appeal noted plaintiff's allegation

that inmate Wilson should have been on single cell status.  (Dkt. No. 1-1 at 6.)  These allegations

were sufficient to put prison officials on notice that plaintiff challenged the decision to double-

cell inmate Wilson based on Wilson's mental disorder.  Plaintiff was not required to give prison

officials a "preview of his lawsuit by reciting every possible theory of recovery or every factual

detail that might be relevant" in the appeal, <u>Gomez</u>, 177 F.Supp. 2d at 983; plaintiff only needed

to describe the facts that gave rise to potential claims he might raise.

        Liberally construed, plaintiff's factual allegations should have led prison officials

to investigate inmate Wilson's classification for double cell housing, and, because plaintiff noted

inmate Wilson's mental disorder, should also have led prison officials to review Wilson's

psychiatrist's recommendation or evaluation concerning Wilson's double cell status, if any.

Moreover, plaintiff alleges he did not learn of the involvement of defendant Virga and Chen in

inmate Wilson's cell move until much later.  And, in seeking third level review, plaintiff argued

that prison officials failed to acknowledge his request for an investigation into plaintiff's issues,

"particularly inmate Wilson's mental health issues, and Wilson's inability to effectively program

in the main population as a double cell status prisoner."  (Dkt. Nos. 63-3 at 13; 1-1 at 3.)  Had

plaintiff filed second or third appeals once he learned of the involvement of defendants Virga and

Dr. Chen, plaintiff risked the screening out of such appeals as duplicative of appeal SAC-10-

00226.  Because plaintiff described the relevant factual circumstances that gave rise to these

related claims, and pled them sufficiently, the court finds that plaintiff provided prison officials

with adequate notice, and exhausted these failure to protect claims as to defendants Virga and Dr.

Chen.  Accordingly, the court recommends that defendants' motion to dismiss plaintiff's claims

as to defendants Virga and Dr. Chen be denied.

        On the other hand, appeal SAC-10-00226 makes no mention of defendant

McCarvel or his alleged actions on January 26, 2010.  Indeed, it appears plaintiff's allegations in

this appeal end the morning of January 26, 2010, before the altercation between plaintiff and

1   inmate Wilson that led to plaintiff's back and neck injuries.  Because there are no factual

2   allegations sufficient to put prison officials on notice of plaintiff's claim that defendant

3   McCarvel failed to protect plaintiff on January 26, 2010, appeal SAC-10-00226 cannot serve to

4   exhaust plaintiff's claims as to defendant McCarvel.

5                      2.  Appeal SAC-10-10-12683

6              In appeal SAC-10-10-12683, signed November 5, 2010, plaintiff requested to

7   receive physical therapy for his back, and to be provided the necessary transportation to get to

8   and from physical therapy, including a wheelchair and a back brace.  (Dkt. No. 63-5 at 10.)

9   Plaintiff alleges that on April 9, 2010, Dr. Wedell prescribed physical therapy for plaintiff's back

10  and neck injuries, but plaintiff was not provided transportation for his first physical therapy

11  session until May 25, 2010, and therefore did not receive physical therapy until May 25, 2010.

12  (Id. at 12.)  Plaintiff informed the therapist that he was housed in administrative segregation, that

13  he did not have a medical chrono to be cuffed in the front or with waist chains, so the therapist

14  would have to make temporary arrangements until plaintiff could get the medical chrono.  (Id.)

15  Plaintiff claimed the therapist told plaintiff the therapist would take care of it.  (Id.)  Plaintiff saw

16  defendant Dr. Wedell on May 30, 2010, and reported the transportation issues, and plaintiff

17  alleged that Dr. Wedell said he "would take care of the mix-up."  (Id.)  Plaintiff was not provided

18  physical therapy.  His June 11, 2010 physical therapy appointment was again cancelled due to a

19  transportation issue.  On September 7, 2010, plaintiff saw defendant Dr. Ali, who allegedly told

20  plaintiff he would order physical therapy.  On October 19, 2010, plaintiff was taken for physical

21  therapy, but the next three sessions were cancelled.  On November 4, 2010, plaintiff saw

22  defendant Dr. Duc.  Finally, plaintiff claimed that he was confined to his cell 24 hours a day

23  since March 30, 2010, the date his back went out, except for doctor visits, and was denied

24  medical assistance to be able to go outside or make it to physical therapy, a period of

25  approximately eight months.  (Id. at 13.)

26  ////

1    In the operative complaint, plaintiff alleges that Dr. Wedell told plaintiff he would

2  need physical therapy, and a waist chain chrono.  (Dkt. No. 49 at 10.)  Plaintiff alleges

3  defendants delayed giving plaintiff needed medical treatment.  (Id. at 21.)

4    Defendants contend that in appeal SAC-10-10-12683, plaintiff sought

5  transportation to and from physical therapy, and failed to put prison officials on notice that

6  plaintiff was not receiving adequate treatment from Doctors Bobbala, Ali, Wedell, or

7  Nangalama, because the appeal noted that plaintiff was prescribed physical therapy.

8    However, defendants read this appeal too narrowly.  Plaintiff alleges facts

9  demonstrating that he was prescribed physical therapy, but because he did not have the proper

10  medical chrono,[5] it presented a transportation issue, which prevented plaintiff from receiving the

11  physical therapy he needed.  Moreover, plaintiff alleges he met with Dr. Wedell, who allegedly

12  told plaintiff he would rectify the problem, yet the problem persisted.  Plaintiff later saw Dr. Ali,

13  who told plaintiff he would prescribe physical therapy, yet plaintiff still did not receive timely

14  physical therapy.  Arguably, this appeal put prison officials on notice that plaintiff was not

15  receiving physical therapy as ordered by plaintiff's doctor.  This appeal is sufficient to exhaust

16  remedies as to defendants Dr. Wedell and Dr. Ali solely as to plaintiff's Eighth Amendment

17  claim related to the provision of a waist chain chrono, and physical therapy, as part of the

18  medical care required following plaintiff's January 26, 2010 injury.  However, because the

19  appeal was signed on November 5, 2010, the day after he saw Dr. Duc, and the grievance raises

20  no factual allegations as to whether Dr. Duc addressed the issue of physical therapy or the waist

21  chain chrono, this grievance cannot serve to exhaust plaintiff's administrative remedies as to Dr.

22  Duc.  Similarly, plaintiff did not raise any other claims concerning medical care following the

23

24    [5]  While not entirely clear, it appears plaintiff's transportation issues stemmed from not
having a waist chain chrono to avoid the painful handcuffing from behind, and from not having a
25  wheelchair chrono, based on his alleged inability to walk to physical therapy.  The court finds
appeal SAC-10-10-12683 sufficient to put prison officials on notice regarding both the
26  wheelchair and the waist chain.

January 26, 2010 incident, and therefore this appeal cannot serve to exhaust plaintiff's medical

claims against the remaining doctor defendants.

### iii.  Conclusion Regarding Third Level Appeals

Thus, the record demonstrates that plaintiff exhausted his failure to protect claims

as to defendants Elston, Virga, and Dr. Chen, and his medical claims as to Dr. Wedell and Dr.

Ali, as to the provision of a wheelchair, waist chain chrono, and physical therapy only.

### E.  Appeals Not Resolved at the Third Level

### 1.  Appeal SAC HC-11013531

On February 15, 2011/March 10, 2011, plaintiff filed an appeal claiming he had

been suffering from back pain for over a year, noting he had been unable to attend yard since

March 30, 2010.  (Dkt. No. 80 at 96.)  Plaintiff stated that he was seeing defendant Dr. Ali for

most of plaintiff's medical appointments, and Dr. Ali was well informed about plaintiff's back

pains, and prescribed plaintiff Methadone for pain relief, which plaintiff took from time to time

to break up the constant pain.  However, plaintiff claimed that this medication would not fix

plaintiff's back, and that Dr. Ali ordered physical therapy and a back brace, which plaintiff had

not received.  Despite Dr. Ali's February 1, 2011 order for an MRI, no appointment was set, and

plaintiff's physical therapy was thwarted by the loss of the wheelchair chrono issued by Dr. Ali.

(Id. at 97.)  Plaintiff alleged that when he informed Dr. Ali that plaintiff did not get the

wheelchair chrono, the back brace or the MRI, Dr. Ali "got upset" and told plaintiff it was not the

doctor's problem, "it's [plaintiff's] problem," and "stop talking to Dr. Ali about [plaintiff's]

problems."  (Id.)  When plaintiff asked Dr. Ali what he should do when he doesn't receive what

Dr. Ali ordered, Dr. Ali allegedly told custody that plaintiff's appointment was over.  On the way

out, plaintiff asked Dr. Ali what his options were, and he responded, "Tony [plaintiff] you fix it,

it's your problem not mine."  (Id.)

Plaintiff complained that medical personnel and custody staff were being

deliberately indifferent to plaintiff for exercising his right to file appeals, and that staff

misconduct and unprofessionalism constitutes cruel and unusual punishment.  (Dkt. No. 80 at

98.)  Plaintiff claimed that staff and medical personnel were dragging out medical assistance in

reprisal.  Plaintiff asked to be seen by an outside independent professional medical doctor.  (Id.)

On March 1, 2011, plaintiff's appeal was returned based on plaintiff's excessive

filings, citing California Code of Regulations, Title 15, § 3084.6(b)(3).[6]  (Dkt. No. 80 at 99.)  On

March 3, 2011, plaintiff objected to the return of the appeal, challenging the appeals

coordinator's interpretation of the regulation, and reiterating that he has been suffering back pain

for fourteen months, and alleging that CDCR played a role in plaintiff's January 26, 2010 injury,

and again sought help to determine why his back has been hurting for 14 months.  (Id.)  On

March 9, 2011, plaintiff's appeal was again returned based on plaintiff's excessive filings.  (Dkt.

No. 80 at 101.)  On March 10, 2011, plaintiff again objected to the interpretation of the filing

regulation, and argued the appeal could be processed because he was still being affected in the

same manner.  (Id.)  On May 3, 2011, plaintiff's appeal was returned again based on plaintiff's

excessive filings.  (Id. at 103.)  Plaintiff was informed that this was the third screen-out of his

appeal, and warned that if he re-submitted this appeal, it would be retained by the health care

appeals office.  (Id.)

---

[6]  Section 3084.6(b)(3) provides:

(b) An appeal may be rejected for any of the following reasons, which include, but
are not limited to:

(3) The inmate or parolee has exceeded the allowable number of
appeals filed in a 14 calendar day period pursuant to the provisions
of subsection 3084.1(f).

Cal. Code Regs. tit. 15 § 3084.6(b)(3).  Section 3084.1(f) states:

(f) An inmate or parolee has the right to file one appeal every 14
calendar days unless the appeal is accepted as an emergency
appeal. The 14 calendar day period shall commence on the day
following the appellant's last accepted appeal.

Cal. Code Regs. tit. 15 § 3084.1(f).

1            On May 4, 2011, plaintiff wrote a letter to the health care appeals coordinator,

2   again raising his objection as to the time line involved with excessive filings, and noting that he

3   was trying to exhaust administrative remedies, so if the appeal is cancelled again, he had done all

4   he could.  (Dkt. No. 80 at 105.)

5            The PLRA "does not require exhaustion when circumstances render

6   administrative remedies 'effectively unavailable.'"  Sapp v. Kimbrell, 623 F.3d 813, 822 (9th

7   Cir. 2010).  An administrative remedy becomes unavailable for purposes of exhaustion if prison

8   officials do not respond to properly filed grievances, or if they otherwise use affirmative

9   misconduct to thwart an inmate's attempts to exhaust.  See Nunez v. Duncan, 591 F.3d 1217,

10  1224, 1226 (9th Cir. 2010) (failure to exhaust excused where prisoner "took reasonable and

11  appropriate steps to exhaust his . . . claim and was precluded from exhaustion, not through his

12  own fault but by the Warden's mistake.").

13           In his opposition, plaintiff does not deny that he filed excessive appeals, but

14  claims that once an appeal is cancelled, he cannot appeal to the next level, apparently arguing

15  further remedies were unavailable.  (Dkt. Nos. 80 at 24-25; 93 at 5.)  Defendants contend this

16  appeal was screened out on three occasions because plaintiff failed to comply with regulations.

17  (Dkt. No. 83 at 4.)

18           The undersigned finds that plaintiff's allegations fail to demonstrate that his

19  administrative remedies were effectively unavailable.  First, the record reflects that plaintiff filed

20  numerous appeals, many of which challenged multiple perceived injustices.  While some of the

21  facts relating to these grievances overlap, the grievances assert various allegations and requests

22  for relief.  Responses were provided to many of these grievances, including several partial grants.

23  (Dkt. Nos. 1-1, 1-2 passim.)

24           Second, prison officials were entitled to disregard plaintiff's grievances on the

25  basis that he filed excessive appeals.  Pursuant to the provisions of Cal. Code Regs., tit. 15,

26  § 3084.1 and 3084.6, an inmate may only submit one grievance every fourteen calendar days, and

17

the appeal may be rejected if an inmate files more than one non-emergency appeal within a

fourteen calendar day period.  Id.  Plaintiff's response to the grievance reflects that he did not

challenge the alleged multiple filing of appeals; rather, he claimed that he had not violated the

seven day restriction.[7]  In the appeal, plaintiff complained of suffering back pain for fourteen

months, which did not constitute an emergency.  Thus, prison officials were entitled to reject

plaintiff's grievances because his grievances exceeded the appeal maximum provided under Cal.

Code Regs., tit. 15, § 3084.6(b)(3).  Plaintiff failed to demonstrate that defendants interfered with

his ability to exhaust his administrative remedies, or otherwise show that his administrative

remedies were effectively unavailable.  Thus, plaintiff's appeal SAC HC-11013531 cannot serve

to exhaust plaintiff's claims as to defendant Dr. Ali.

### 2.  Appeal Nos. SAC 10-10-10964 & SAC-10-10-11472

In both Appeal Nos. SAC 10-10-10964 and SAC-10-10-11472, plaintiff contends

that he did not refuse to attend the medical appointment for review of the appeals, but that

because he did not have a waist chain chrono, being cuffed in the back would have subjected him

to more pain.  Thus, it appears plaintiff opted not to attend the medical appointment in order to

avoid such pain.  The court will set forth the details and history of each appeal, and will then

analyze whether the appeals exhaust any of plaintiff's claims against the medical defendants.

### i.  Appeal No. SAC 10-10-10964

On March 30, 2010, plaintiff submitted appeal, #10-10964, and sought a written

explanation for his unnecessary pain and suffering, and why it has taken over two months to get

---

[7]  The seven day time frame was changed to fourteen days by amendments to the regulations on December 13, 2010, which became operative on January 28, 2011.  The prior regulation, to which plaintiff appeared to refer, stated that an inmate may only submit one grievance within a seven-calendar-day period.  Cal. Code Regs., tit. 15, § 3084.4(a).  If an inmate files more than one non-emergency appeal within a seven-calendar-day period, such submission shall be considered excessive and those additional "excessive" grievances may be suspended. Cal. Code Regs., tit. 15, § 3084.4(a)(1) ("When an appellant submits excessive appeals, the first appeal received shall be processed normally and all subsequent non-emergency appeals filed within the seven-calendar-day period by that individual shall be suspended.")

1   some medical relief. (Dkt. No. 80 at 66; 1-1 at 22.)  Plaintiff stated that on January 26, 2010,

2   plaintiff was ordered to cuff up in his cell, but once he cuffed up, his cellmate attacked him. (Id.)

3   Plaintiff stated he was unable to protect himself, and asked to be uncuffed or released, but was

4   denied.  Plaintiff claimed he was being choked, and pressure was being placed on his back.

5   Eventually, the lieutenant came and ordered that plaintiff's cell be opened.  About two to three

6   days later, plaintiff began feeling severe back and neck pain. (Id. at 67; 24.)  Plaintiff claimed he

7   had not gotten any medical treatment by March 30, 2010.  Plaintiff stated that he was seen by

8   defendant Dr. Bobbala who did not offer plaintiff any help, but "punched" and "chopped"

9   plaintiff's back, and then tried to bend plaintiff over, which was very painful. (Id.)  Plaintiff

10   stated he was not provided adequate medical care for over two months, and was unable to sleep

11   most nights, or function without serious pain. (Id.)

12          The informal and formal levels of review were bypassed.  The appeal was

13   cancelled at the first level based on plaintiff's refusal to "come to the clinic on May 13, 2010, for

14   evaluation and for the 602-appeal interview." (Dkt. No. 80 at 71.)  A refusal of treatment form is

15   appended to the appeal, which states "refused MD line," and indicates that plaintiff refused to

16   sign the form on May 13, 2010, and was witnessed by LVN Durago, and Correctional Officer R.

17   Culverson  (Dkt. No. 80 at 69.)

18          On April 27, 2010/May 31, 2010, plaintiff filed an appeal to the second level,

19   stating he did not refuse to see the doctor, but was currently in administrative segregation and

20   could not just go to the doctor, but must be taken by staff.  Plaintiff claimed that Correctional

21   Officer Culverson came to plaintiff's cell to escort him to the doctor, but that Culverson knew

22   plaintiff suffered from severe back pain and could not cuff up from the back, and that plaintiff

23   did not have a medical chrono for cuffing up in the front or for waist chains, so Culverson

24   offered to escort plaintiff cuffed in the back, subjecting plaintiff to more pain, or refuse to see the

25   doctor. (Dkt. No. 80 at 74.)  Plaintiff added that there could be no guarantee he would obtain

26   relief from the doctor if plaintiff went. (Id.)  Plaintiff alleges that Culverson refused to allow

1   plaintiff to sign the refusal form, and "piled on a couple of his C/O worker's signatures."  (Id.)

2   Plaintiff argued that it made no sense for plaintiff to refuse to see the doctor when he previously

3   put in fourteen different medical request slips, one medical appeal for not being seen, and several

4   SA-22 forms requesting the status of the medical appeal, to finally get a doctor's appointment.

5   (Id.)  Plaintiff alleged that Culverson and Dr. Wedell were attempting to undermine plaintiff's

6   right to medical care, and his right to appeal.  (Id.)  Meanwhile, plaintiff alleged he had continued

7   pain and suffering.  (Id.)

8            Plaintiff provided a copy of a May 31, 2010 letter he wrote to the Warden to

9   complain about the handling of the refusal of treatment form, that plaintiff had been in severe

10  pain for over four months, and had not been to the yard in two months.  (Dkt. No. 80 at 76.)

11           On July 21, 2010, plaintiff was informed that his appeal was being returned for

12  "abuse of the appeal procedure:  California Code of Regulations, Section 3084.4."  (Id. at 78.)

13  Plaintiff was informed that he could not appeal a screening issue.  (Id.)

14                          ii.  Appeal No. SAC-10-10-11472

15           On May 25, 2010, plaintiff filed an appeal seeking to be seen by an outside doctor

16  at U.C. Davis Medical Center, and to have his neck and back pain addressed in a professional

17  manner.  (Dkt. No. 80 at 80.)  Plaintiff noted he was attacked on January 25, 2010, and during the

18  attack he felt a "snapping noise and a sharp pain" in his back, and that plaintiff's neck and back

19  are stiff and sore.  (Id.)  Plaintiff added that at first he did not complain because he thought the

20  pain would go away, but it did not.  (Id. at 80, 82.)  Plaintiff alleged he had been seeking medical

21  care for the last four months.  (Id. at 82.)  Plaintiff claimed that he was seen by defendant Dr.

22  Bobbala in February, 2010, but that the doctor punched and chopped plaintiff's back, while

23  asking, "does that hurt?," and ended with the doctor's attempt to bend plaintiff over, despite

24  plaintiff's complaints of pain.  (Id.)  Plaintiff allegedly received no medication from Dr. Bobbala.

25  Plaintiff alleged that he continued putting in medical slips with no response.  (Id.)

26  ////

1        On March 30, 2010, plaintiff went down, and was unable to stand.  Plaintiff was

2   carried by stretcher to B-medical to see Dr. Nangalama.  Plaintiff stated that Dr. Nangalama gave

3   plaintiff 500 mg of salsalate which did nothing for plaintiff's pain.  On April 7 or 8, 2010,

4   plaintiff was seen by Dr. Wedell; plaintiff claimed the doctor was not listening, responded "no"

5   to every request plaintiff made, and informed plaintiff that he would not be receiving any pain

6   medications.  (Id.)  However, Dr. Wedell did order treatment for plaintiff's back, but plaintiff had

7   not received any treatments for his back or neck.  (Dkt. No. 80 at 83.)  Plaintiff added that Dr.

8   Wedell told him the doctor would order staff to allow plaintiff to be handcuffed in the front, but

9   staff told plaintiff that was not true.  (Id. at 83.)  Dr. Wedell ordered plaintiff a seven day

10  prescription of 750 mg of methocarbamol.  Plaintiff claimed he was suffering every day, and was

11  unable to go to yard since March 30, 2010, due to neck and back pains.  (Id.)  Plaintiff stated that

12  his back felt as though a knife was in it; it was stiff and sore all the time, and it hurt to bend, sit

13  and stand for too long.  Also, with allergy season, it hurt plaintiff's back and neck to sneeze.

14  Plaintiff claimed that medical staff would not prescribe plaintiff allergy medication.  (Id.)

15       On June 9, 2010, plaintiff's appeal was assigned to the Health Care Appeals

16  Office for a First Level response.  (Dkt. No. 80 at 94.)

17       On June 16, 2010, plaintiff's appeal was cancelled because plaintiff refused to

18  come down to the Medical Officer's Line for his 602-appeal interview.  Plaintiff was informed

19  that "all Administrative Remedies have been exhausted."  (Dkt. No. 80 at 84.)  The refusal form,

20  dated June 24, 2010, stated that plaintiff refused MD line because plaintiff had no waist chain

21  chrono.  (Id. at 86.)  Plaintiff's handwritten note on the form stated:

22           The handcuffs in the back causes me a lot of pain.  In fact, it's
             difficult for me to stand or walk once the cuffs come off.  I've tried
23           over and over again to explain this problem.  I need the doctor to
             find out why the cuffs inflame my back and neck the way it does.
24           It did not used to be this way.  The only way I can see the doctor is
             to cuff-up.  Because I'm in ad-seg and the only way to get fixed is
25           to see the doctor but to see the doctor under these conditions is like
             saying let me kick you in your back first and then you can see the
26           doctor.

21

(Dkt. No. 80 at 86.)

          iii.  <u>Analysis</u>

At bottom, plaintiff claims he needed a waist chain chrono in order to go to medical without suffering undue pain from being cuffed from behind, and appears to contend this should excuse him from having to exhaust his administrative remedies.  However, the record reflects that plaintiff was seen by defendant Dr. Bobbola in February of 2010.  Plaintiff raised no allegations as to whether he asked defendant Dr. Bobbola for a waist chain chrono at that time. Plaintiff was seen by defendant Dr. Wedell on April 9, 2010, who told plaintiff he would need a waist chain chrono.  (Dkt. No. 49 at 10.)  Plaintiff did not receive his medical chrono to wear a waist chain until August 4, 2010.  (Dkt. No. 1-2 at 28.)  However, plaintiff points to no appeal putting prison officials on notice, prior to April 9, 2010, that plaintiff suffered severe pain when handcuffed from behind and needed a waist chain chrono.  Plaintiff produced no appeal after the April 9, 2010 appointment stating that despite defendant Dr. Wedell's order, plaintiff had not yet received such chrono.  It wasn't until November 5, 2010, in appeal SAC-10-10-12683, that plaintiff also contended, in the initial grievance, that he was not provided a medical chrono to be cuffed in the front or with waist chains, which appeared to interfere with his transport to physical therapy.  (Dkt. No. 63-5 at 12.)

Although plaintiff raised the issue of handcuffing behind his back in subsequent objections to appeals SAC 10-10-10964 and SAC-10-10-11472, he did not raise the issue in the initial grievance in appeal SAC 10-10-10964.  In appeal SAC-10-10-11472, plaintiff recounted the orders Dr. Wedell made at the April, 2010 appointment, stating that Dr. Wedell told him the doctor would order staff to allow plaintiff to be handcuffed in the front, but staff told plaintiff that was not true.  (Dkt. No. 80 at 83.)  Plaintiff did not include, in the action requested portion of the appeal, a request that he be granted a waist chain chrono, or that staff comply with Dr. Wedell's order for a waist chain chrono.  Moreover, it does not appear that plaintiff filed a separate appeal raising the waist chain chrono issue after appeals SAC 10-10-10964 and

22

1  SAC-10-10-11472 were cancelled.  The record reflects plaintiff was seen by defendant Dr.

2  Bobbola in February, and defendant Dr. Wedell in April, and presumably plaintiff was

3  transported to those appointments with his hands handcuffed from behind.[8]

4        The PLRA "does not require exhaustion when circumstances render

5  administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822.  An administrative

6  remedy becomes unavailable for purposes of exhaustion if prison officials do not respond to

7  properly filed grievances or if they otherwise use affirmative misconduct to thwart an inmate's

8  attempts to exhaust.  See Nunez, 591 F.3d at 1226; Brown, 422 F.3d at 943 n.18.

9        Defendants adduced evidence that appeals SAC 10-10-10964 and

10  SAC-10-10-11472 were cancelled because plaintiff would not be escorted to medical for the

11  appeal review.  While plaintiff contends he had no choice but to refuse because he did not have a

12  waist chain chrono and would suffer pain if handcuffed from behind, plaintiff failed to

13  demonstrate he took steps to put prison officials on timely notice, prior to simply refusing to go

14  to medical, that he was in need of such a chrono, or that prison officials failed to provide one

15  after defendant Dr. Wedell ordered the chrono.  While the court is sympathetic to plaintiff not

16  wanting to increase his pain by being handcuffed from behind, prison regulations require inmates

17  to have medical chronos when seeking to deviate from security procedure, and plaintiff failed to

18  demonstrate that he availed himself of the processes available to justify his refusal on two

19  occasions.  While it was certainly plaintiff's prerogative to opt not to be escorted to medical

20  under these conditions, by doing so he risked having his appeal cancelled.  See Woodford, 548

21  U.S. at 88 (explaining that the PLRA requires proper exhaustion of administrative remedies,

22  which means that a prisoner must complete the administrative review process in accordance with

23  the applicable procedural rules as a precondition to bringing suit); see also Cal. Code Regs. tit.

24

25     [8] In the June 24, 2010 refusal form, plaintiff claimed that being cuffed from behind did
26  not previously inflame his back and neck.  (Dkt. No. 80 at 86.)  However, plaintiff does not
   indicate when this inflammation began.

1    15, § 3084.6(c)(8) ("An appeal may be cancelled" if "[t]he appellant refuses to be interviewed or

2    to cooperate with the reviewer.")

3              Accordingly, the court finds that the circumstances surrounding appeals SAC

4    10-10-10964 and SAC-10-10-11472 did not render plaintiff's administrative remedies effectively

5    unavailable.

6                   F.  Un-Numbered Appeals - Plaintiff's Exhibit 9

7              Plaintiff argues that his August 18, 2010 and August 26, 2010 appeals, contained

8    in his exhibit 9 to his original complaint, demonstrate that plaintiff exhausted his administrative

9    remedies as to defendants Virga and McCarvel.[9]  (Dkt. No. 80 at 24.)  Plaintiff contends he had a

10   difficult time obtaining a complete copy of the incident report, and once he finally obtained the

11   complete copy, his appeal was rejected as untimely.

12                   a.  August 26, 2010 Appeal

13             In the August 26, 2010 appeal, plaintiff filed an appeal stating that he had not

14   received the final copy of the CDC-115 or the 128-G classification chrono.  (Dkt. No. 1-2 at 32.)

15   Plaintiff asked that he be given copies of those documents.  Plaintiff does not discuss the January

16   26, 2010 incident, or allege facts pertinent to the instant claims against defendants Virga and

17   McCarvel.  Thus, this appeal cannot serve to exhaust plaintiff's claims as to defendants Virga

18   and McCarvel.

19                   b.  August 18, 2010 Appeal

20             In the August 18, 2010 appeal, plaintiff sought a rehearing of the RVR so he could

21   tell his side of the story.  (Dkt. No. 1-2 at 27.)  Plaintiff also sought a transfer, and "some medical

22   assistance for his back and nightmares, and an explanation why [he] could not be let out of the

23   cell before [his] injuries occurred."  (Id.)  Plaintiff began describing the problem by stating he

24   _____

25             [9]  Plaintiff also provided a copy of his August 18, 2010 appeal as Exhibit 5 to his
     opposition, and a copy of his August 26, 2010 appeal as Exhibit 10 to his opposition.  (Dkt. No.
26   80 at 38-41; 63-64.)

1    was issued a CDC 115, Log No. C-10-01-033 ("RVR") on January 26, 2010.  (Id.)  Plaintiff

2    stated that he cannot wear handcuffs in the back, but did not receive his medical chrono to wear a

3    waist chain until August 4, 2010, so on July 3, 2010, the hearing lieutenant would not allow

4    plaintiff to use a waist chain.  (Id. at 28.)  Thus, plaintiff alleged he was not allowed to present a

5    defense.  (Id.)  On August 12, 2010, Officer A. Johnson gave plaintiff a 629-A SHU term

6    assessment worksheet, which plaintiff did not understand, and claimed that on July 7, 2010, a

7    classification hearing was held without his presence again because he did not have a medical

8    chrono for waist chains.  Plaintiff claimed that because he was unable to attend the hearing, he

9    was not aware of the guilty finding until August 18, 2010.  (Id.)  Plaintiff alleged he still had not

10   received the final copy of the CDC 115 or the 128-G chrono for the July 7, 2010 classification

11   action.

12          Plaintiff then recounted the events of January 26, 2010, and alleged that defendant

13   McCarvel's orders put plaintiff's life in danger, and that his compliance with defendant

14   McCarvel's order left plaintiff defenseless against inmate Wilson.  (Dkt. No. 1-2 at 29.)  Plaintiff

15   alleged that inmate Wilson suffers from a range of mental disorders, and had since been returned

16   to EOP housing and single cell status.  Plaintiff stated that "classification knew or should have

17   known that Wilson could not be housed with [plaintiff]."  (Dkt. No. 1-2 at 29.)

18          On August 31, 2010, plaintiff's appeal was returned to plaintiff with a screening

19   form noting that plaintiff had not adequately completed the appeal form, and asking plaintiff to

20   attach the CDC 115 "After Completion of RVR."  (Dkt. No. 1-2 at 30.)  The appeals coordinator

21   also noted that plaintiff's "request for transfer and medical assistance require separate appeals;

22   please remove heading from appeal form or submit new appeal."  (Id.)

23          Plaintiff also provided the court with an inmate request for interview form in

24   which he sought the final copy of the CDC-115 dated January 26, 2010, Log No. C10-01-033,

25   and incident reported dated January 26, 2010, Log No. SAC-FAC-10-01-0059, as well as the

26   128-G for the 7-7-10 and 8-18-10 classifications.  (Dkt. No. 1-2 at 31.)  The form was initially

1    dated 8-19-10, but the "19" is crossed out, and "26" is written above.  There are no marks

2    indicating the form was received by prison officials.  (Id.)

3              On October 5, 2010, plaintiff sought transfer to a prison of his choice, and an

4    investigation into the contents of his appeal.  Plaintiff alleged that in late February or early March

5    of 2010, Correctional Officer Scruggs issued plaintiff a CDCR incident report concerning the

6    January 26, 2010 incident, and after reading the report, plaintiff decided to mail the original copy

7    of the incident report out of the prison because he believed there would be "foul play" after he

8    filed an appeal.  (Dkt. No. 1-2 at 40.)  On July 1, 2010, plaintiff was issued a copy of the

9    Investigative Employee Report, related to the January 26, 2010 incident, and a copy of the

10   January 26, 2010 incident report.  (Id. at 41.)  However, upon closer inspection, plaintiff

11   determined the incident report was "fake,"[10] and threw it onto the tier, but a correctional officer

12   returned it.  The first two pages of the report had come loose, and plaintiff stored those pages in a

13   different location, but left the rest of the report on his desk.  On August 25, 2010, plaintiff was

14   allegedly ordered out of his cell so the cable guy could fix the cable box, and had to leave his cell

15   for about an hour and a half.  On September 30, 2010, a nondefendant correctional officer

16   delivered mail, handing plaintiff a large yellow envelope that was open.  Plaintiff contended the

17   envelope contained a copy of the "fake" incident report that was sitting on plaintiff's desk

18   because it was missing the first two pages.  Plaintiff alleged this incident demonstrated an

19   attempted cover-up regarding the events of January 26, 2010.  (Id. at 41-42.)  Plaintiff named

20   numerous correctional officers in this appeal, but none of them are named defendants in this

21   action.  Plaintiff did not name defendant McCarvel, or raise allegations concerning the specific

22   events of January 26, 2010, or regarding plaintiff's failure to protect claim.  (Dkt. No. 1-2 at 40-

23   42.)

24   ////

25   _____

26        [10]  Plaintiff did not explain in what way he believed the report to be "fake."

1          On October 8, 2010, plaintiff's October 5, 2010 appeal was screened out, stating

2  that plaintiff failed to adequately complete the appeal form, and that plaintiff was required to

3  attach a copy of his most recent CDC-128G regarding classification, and that requests for

4  transfers needed to be submitted on a different form.  (Id. at 44.)

5          Plaintiff's October 24, 2010 request for interview stated that plaintiff's October 5,

6  2010 appeal was about staff taking legal documents out of his mail.  (Dkt. No. 1-2 at 43.)

7  Subsequent requests and documents re-confirmed that plaintiff's October 5, 2010 appeal was

8  about staff allegedly "stealing" legal documents out of plaintiff's mail.  (Id. at 47, 49, 50, 56, 58.)

9          An inmate who has "properly" availed himself of the state's administrative

10  process through the highest available administrative level satisfies the exhaustion requirement.

11  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).  That is, inmates must file their grievance

12  claims and appeals in the place, at the time, and in the manner the administrative rules require.

13  Woodford, 548 U.S. at 94; see, e.g., Cal. Code Regs., tit. 15, § 3084.2(c) (an initial grievance

14  must be submitted within fifteen working days of the event giving rise to the grievance).  The

15  appeals coordinator may reject untimely grievances.  Cal. Code Regs., tit. 15, § 3084.6(c).  A

16  claim rejected as untimely or as otherwise procedurally defective remains unexhausted for PLRA

17  purposes.  Woodford, 548 U.S. at 83-86, 90-91, 103 (defective claims or appeals rejected as

18  defective do not satisfy the exhaustion requirement, considering "the informality and relative

19  simplicity of prison grievance systems like California's").  "The obligation to exhaust 'available'

20  remedies persists as long as some remedy remains 'available.'"  Brown, 422 F.3d at 935, citing

21  Booth, 532 U.S. 731 (a prisoner must "press on to exhaust further levels of review" until he has

22  either received all "available" remedies at an intermediate level of review "or been reliably

23  informed by an administrator that no remedies are available").

24          However, the Ninth Circuit has held California prison regulations "explicitly

25  create an exception to the timely filing requirement.  If [a prisoner] was unable to file within the

26  fifteen-day filing period, his failure to file timely does not defeat his claim."  Marella v. Terhune,

1    568 F.3d 1024, 1027 (9th Cir. 2009).   Nevertheless, [i]f a prisoner had full opportunity and

2    ability to file a grievance timely, but failed to do so, he has not properly exhausted his

3    administrative remedies." Id. at 1028 (citing Woodford, 548 U.S. at 88).

4            Because the court previously found that appeal SAC-10-00226 exhausted

5    plaintiff's claim as to defendant Virga, the court need not address whether plaintiff's August 18,

6    2010 appeal exhausted plaintiff's claim as to defendant Virga.

7            With regard to defendant McCarvel, it appears plaintiff was under the

8    misapprehension that he could not file an appeal concerning defendant McCarvel's actions on

9    January 26, 2010, until the RVR was decided.   Unfortunately, plaintiff was mistaken.   Plaintiff's

10   due process challenge to the RVR, as well as his challenge to the guilty finding, were issues

11   separate from plaintiff's claim that defendant McCarvel failed to protect plaintiff from inmate

12   Wilson's attack.   The RVR alleged that plaintiff committed battery on his cellmate with a

13   weapon with serious bodily injury.   (Dkt. No. 80 at 52.)

14           Here, defendant McCarvel responded to plaintiff's cell on January 26, 2010, and

15   plaintiff alleges defendant McCarvel failed to protect plaintiff from inmate Wilson's attack.

16   However, plaintiff did not file this appeal until August 18, 2010, claiming that defendant

17   McCarvel failed to protect plaintiff.   Thus, plaintiff's appeal was untimely under CDCR

18   regulations, as it was not presented fifteen working days after January 26, 2010.   It appears that

19   after plaintiff was seen in the C Facility clinic for medical evaluation, he was re-housed into

20   administrative segregation pending investigation.   (Dkt. No. 80 at 54.)   Thus, it does not appear

21   plaintiff was prevented from filing an appeal alleging defendant McCarvel failed to protect

22   plaintiff.

23           However, prison officials did not screen out plaintiff's August 18, 2010 appeal as

24   untimely.   Rather, the appeals coordinator marked the box, noting plaintiff had not adequately

25   completed the appeal form or attached the property documents, and the box  "CDC 115 After

26   Completion of RVR."  (Dkt. No. 1-2 at 30.)  Although the RVR was completed on August 8,

2010 (dkt. no. 80 at 53), it was not entered into OBIS until August 18, 2010 (id. at 52), which might explain the reference to "after completion of RVR."  However, the appeals coordinator also noted that plaintiff's "request for transfer and medical assistance require separate appeals; please remove heading from appeal form or submit new appeal."  (Id.)  It is a violation of California Code of Regulations, Title 15, section 3084.2(a)(1) to file an appeal combining issues. In the August 18, 2010 appeal, plaintiff raised multiple issues.  Thus, plaintiff's August 18, 2010 appeal was properly screened out, and cannot serve to exhaust plaintiff's claim against defendant McCarvel.

Plaintiff did not file a subsequent appeal challenging defendant McCarvel's actions on January 26, 2010.  Thus, the court finds that plaintiff failed to exhaust his administrative remedies as to defendant McCarvel.

G.  State Law Claims

Defendants request that the court take judicial notice of the records and claims contained in the files of the Victim Compensation and Government Claims Board ("VCGCB"). (Dkt. No. 67.)  Defendants provided a declaration from Eric Rivera, Custodian of Records for the VCGCB, who reviewed, and appended copies of, plaintiff's claim received on August 15, 2011. (Dkt. No. 67-1 at 2-17.)  Mr. Rivera determined that plaintiff's claim was not accompanied by the required filing fee, or an affidavit or request for waiver of the filing fee, and therefore the claim was not accepted by the VCGCB as a government claim.  (Id.)  Defendants contend that plaintiff's state law claims should be dismissed on that basis.

Plaintiff believes that he did submit a fee waiver form, and states he will submit a second fee waiver form as soon as possible.  (Dkt. No. 80 at 21.)

Under the California Tort Claims Act ("CTCA"), set forth in California Government Code sections 810 et seq., a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board ("VCGCB" or "Board"), and the Board

1    acted on the claim, or the time for doing so expired.  "The Tort Claims Act requires that any civil

2    complaint for money or damages first be presented to and rejected by the pertinent public entity."

3    Munoz v. California, 33 Cal. App. 4th 1767, 1776 (1995).  The purpose of this requirement is "to

4    provide the public entity sufficient information to enable it to adequately investigate claims and

5    to settle them, if appropriate, without the expense of litigation."  City of San Jose v. Superior

6    Court, 12 Cal.3d 447, 455 (1974) (citations omitted).  Compliance with this "claim presentation

7    requirement" constitutes an element of a cause of action for damages against a public entity or

8    official.  State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1244 (2004).  Thus, in the state

9    courts, "failure to allege facts demonstrating or excusing compliance with the claim presentation

10   requirement subjects a claim against a public entity to a demurrer for failure to state a cause of

11   action."  Id. at 1239 (fn. omitted).

12            Consistently, federal courts require compliance with the CTCA for pendant state

13   law claims that seek damages against state public employees or entities.  Willis v. Reddin, 418

14   F.2d 702, 704 (9th Cir. 1969); Mangold v. California Public Utilities Commission, 67 F.3d 1470,

15   1477 (9th Cir. 1995).  State tort claims included in a federal action, filed pursuant to 42 U.S.C.

16   § 1983, may proceed only if the claims were first presented to the state in compliance with the

17   claim presentation requirement.  Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621,

18   627 (9th Cir. 1988); Butler v. Los Angeles County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).

19            To be timely, a claim must be presented to the VCGCB "not later than six months

20   after the accrual of the cause of action."  Cal. Govt. Code § 911.2.  Should a claimant miss this

21   deadline, the claimant may file a written application for leave to file a late claim, within a year

22   after the accrual of the cause of action.  Id., § 911.4.  If the Board denies the application, the

23   notice of denial must include a warning to the claimant that no court action may be brought on

24   the claim unless the claimant first files a petition with the appropriate court requesting relief from

25   the claim presentation requirement, and obtains a court order granting such relief.  Id., § 911.8.

26   Failure to obtain such relief bars any suit on the claim.

1    An individual who files a claim pursuant to the CTCA is charged with knowledge

2 of the applicable statute of limitations.  See Hunter v. Los Angeles County, 262 Cal. App. 2d

3 820, 822 (1968) ("once a claimant has filed his claim, he demonstrates familiarity with the

4 statutory procedures governing his grievance, and can reasonably be charged with knowledge of

5 the time limitations that are part of that procedure").

6    First, defendants' request for judicial notice is granted.  (Dkt. No 67.)

7    Second, it appears that plaintiff is correct.  Review of the forms submitted by Mr.

8 Rivera reflect that plaintiff appended a completed affidavit for waiver of government claims

9 filing fee and financial information form, and was marked received on the same day as his first

10 claim, August 15, 2011, on form VCGCB-GC-0010 8/04, and bears the VCGCB claim number,

11 G599138, which was also written on the claim form.  (Dkt. No. 67-1 at 6-7.)[11]  Thus, despite Mr.

12 Rivera's declaration claiming that plaintiff failed to submit "an affidavit or request for waiver of

13 the filing fee," it appears from the documents appended to Mr. Rivera's declaration, that plaintiff

14 did submit such a form.  Because the defendants' motions to dismiss plaintiff's state law claims

15 is based on plaintiff's alleged failure to comply with the claim presentation requirements of the

16 California Government Claims Act, and the declaration upon which they rely appears internally

17 inconsistent with the exhibits appended thereto, the court recommends that the motions to

18 dismiss plaintiff's state law claims be denied without prejudice should defendants be able to

19 clarify the inconsistency or address the timeliness or substance of plaintiff's claim.[12]

20

21    [11]  Mr. Rivera similarly declares that plaintiff's second, unrelated, claim G604262 was not
22 accompanied by the filing fee or an affidavit or request for waiver of the filing fee, but the
   appended documents provide a copy of the completed affidavit/waiver form signed by plaintiff,
23 received by the VCGCB on the same day as the claim, and bearing the same claim number.  (Dkt.
   No. 67-1 at 8-13.)

24    [12]  In his opposition, plaintiff complains that defendants did not inform plaintiff that there
25 was a problem with his claim form, and that if there was a problem, the defendants should have
   returned plaintiff's application with an explanation for why plaintiff's application could not be
26 processed.  (Dkt. No. 80 at 14-15.)  However, the VCGCB is not part of the CDCR, and
   defendants are under no such obligation.

IV.  Conclusion

In accordance with the above, IT IS HEREBY ORDERED that defendants'

request for judicial notice is granted (dkt. no 67); and

IT IS RECOMMENDED that:

1.  Defendants' motions to dismiss (dkt. nos. 63 & 84) be granted in part, and

denied in part, as follows:

a.  Defendants' motion to dismiss plaintiff's failure to protect claims as to

defendants Elston, Virga, and Dr. Chen be denied;

b.  Defendants' motion to dismiss plaintiff's Eighth Amendment claims as

to defendants Dr. Wedell and Dr. Ali be denied as to plaintiff's claims that he was not timely

provided physical therapy or a waist chain chrono;

c.  Defendants' motion to dismiss plaintiff's state law claims be denied

without prejudice; and

d.  In all other respects, defendants' motion to dismiss be granted based on

plaintiff's failure to exhaust his claims as to defendants McCarvel, Dr. Bobbala, Dr. Nangalama,

Dr. Dhillon, and Dr. Duc.

2.  Defendants Phelps, Elston, Virga, Dr. Chen, Dr. Wedell, and Dr. Ali be

directed to file an answer within fourteen days from any district court order adopting the instant

findings and recommendations.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within fourteen days after service of the objections.  The

////

1  parties are advised that failure to file objections within the specified time may waive the right to

2  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:  March 6, 2013

4

5

6  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

7  asbe2462.mtd

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26