1
2
3
4
5
6
7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TONY ASBERRY,                              No.  2:  11-cv-2462 KJM KJN P

12                  Plaintiff,

13          v.                                   FINDINGS AND RECOMMENDATIONS

14   MATTHEW CATE, et al.,

15                  Defendants.

16

17          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for terminating sanctions

19   filed June 4, 2014 based on plaintiff's failure to appear at his deposition.  (ECF No. 162.)  For the

20   following reasons, the undersigned recommends that defendants' motion be granted.

21   Legal Standard

22          Federal Rule of Civil Procedure 37(d) provides that the court may order sanctions if a

23   party fails, after being served with proper notice, to appear for their deposition.  As a sanction, the

24   court may order the party failing to act to pay the reasonable expenses, including attorneys' fees,

25   caused by the failure, unless the failure was substantially justified or other circumstances make an

26   award of expenses unjust.  Fed. R. Civ. P. 37(d)(3).  The court may also dismiss the action as a

27   sanction for a party's failure to appear at their deposition.  Fed. R. Civ. P. 37(b)(2)(A)(v).

28   ////

                                                      1

1    The court has the authority under Rule 37(b) to impose litigation-ending sanctions. <u>See</u>

2    <u>Shepherd v. Am. Broad. Co., Inc.</u>, 62 F.3d 1469 (D.C.Cir. 1995) (holding court may impose

3    litigation-ending sanctions where it finds by clear and convincing evidence that abusive litigation

4    behavior occurred and lesser sanction would not sufficiently punish and deter the misconduct).

5    When dismissal is the sanction, however, "the range of discretion is narrowed and the losing

6    party's noncompliance must be due to willfulness, fault, or bad faith." <u>Payne v. Exxon Corp.</u>,

7    121 F.3d 503, 507 (9th Cir. 1997) (quoting <u>Henry v. Gill Indust.</u>, 983 F.2d 943, 946 (9th Cir.

8    1993)).

9    The court applies a five-part test, with three subparts to the fifth part, to determine

10   whether a case-dispositive sanction under Rule 37(b)(2) is just: "'(1) the public's interest in

11   expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of

12   prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on

13   their merits; and (5) the availability of less drastic sanctions.'" <u>Connecticut General Life Ins. Co.</u>

14   <u>v. New Images of Beverly Hills</u>, 482 F.3d 1091, 1096 (9th Cir. 2007) (quoting <u>Jorgensen v.</u>

15   <u>Cassiday</u>, 320 F.3d 906, 912 (9th Cir. 2003).

16   "The sub-parts of the fifth factor are whether the court has considered lesser sanctions,

17   whether it tried them, and whether it warned the recalcitrant party about the possibility of case-

18   dispositive sanctions." <u>Id.</u> "This 'test' is not mechanical." <u>Id.</u> "It provides the district court

19   with a way to think about what to do, not a set of conditions precedent for sanctions or a script

20   that the district court must follow." <u>Id.</u>

21   <u>February 20, 2014 Motion to Compel</u>

22   On February 20, 2014, defendants filed a motion to compel and for costs based on

23   plaintiff's failure to attend his deposition noticed for February 14, 2014. (ECF No. 143)  In

24   support of that motion, defendants submitted the declaration of defense counsel who described

25   her attempt to depose plaintiff. (ECF No. 143-2.)

26   In her declaration, defense counsel stated that on February 14, 2014, she went to the

27   Richard J. Donovan Correctional Facility ("RJDCF") in San Diego to depose plaintiff. (<u>Id.</u>)

28   When she arrived, she was informed that plaintiff was refusing to leave his cell without a

1  wheelchair.  (Id.)  At the same time, she was informed that medical staff had not designated

2  plaintiff as a "DPO" or "DSW" disabled, which would require the use of a wheelchair.  (Id.)

3  Even though plaintiff did not have a documented medical basis to need a wheelchair to be

4  transported to the deposition, defense counsel requested that correctional officers bring a

5  wheelchair to plaintiff's housing unit to transport him to the deposition.  (Id.)  After officers

6  brought plaintiff the wheelchair, defense counsel was informed that plaintiff was dissatisfied with

7  the wheelchair and was demanding a different kind of wheelchair.  (Id.)

8         Defense counsel was also informed that plaintiff was insisting on being unshackled, but

9  due to plaintiff's placement in administrative segregation and safety and security concerns,

10  officers were unwilling to accommodate plaintiff's requests with regard to removing his

11  restraints.  (Id.)

12         In his opposition to the February 20, 2014, motion to compel, plaintiff admitted that a

13  wheelchair was brought to his cell to take him to his deposition but complained that it was not

14  equipped with removable sides arms or side handles, so that he was unable to get his body into it.

15  Plaintiff did not provide any evidence in support of his claim that he currently required a

16  wheelchair.

17         On March 31, 2014, the undersigned granted defendants' motion to compel.  (ECF No.

18  150.)  The undersigned found that plaintiff's claim that he required a wheelchair was

19  unsupported.  (Id. at 4.)  The undersigned further found that plaintiff's refusal to attend the

20  deposition unless his shackles were removed was not justified based on the valid safety and

21  security concerns of RJDCF officials.  (Id.)

22         While defendants moved to dismiss plaintiff's action as a sanction for his failure to appear

23  at his deposition, the undersigned found that this extreme sanction was not warranted.  (Id.)

24  Although defendants incurred $4213.88 in costs and attorneys' fees associated with plaintiff's

25  deposition and the motion to compel, the undersigned ordered plaintiff to pay sanctions of $500.

26         The undersigned further ordered defendants to re-notice plaintiff's deposition within sixty

27  days.  (Id.)  The undersigned ordered that the deposition was to take place in a room at the prison

28  designated for depositions, i.e., not at plaintiff's cell.  (Id.)  The undersigned ordered that during

3

the deposition, plaintiff was to honor all security concerns, including the wearing of shackles.
(Id.)  Finally, plaintiff was warned that he would face dismissal of this action if plaintiff did not
attend his deposition.  (Id.)  The undersigned noted that while defendants were not required to
provide plaintiff with a wheelchair, but that having a wheelchair available for plaintiff's use
increased the likelihood that the deposition would be completed.  (Id.)

Pending Motion for Terminating Sanctions

*Background*

Defendants move to dismiss this action on grounds that plaintiff again failed to attend his
deposition.

In her declaration submitted in support of the motion, defense counsel states that on
May 27, 2014, she went to the RJDCF to depose plaintiff.  (ECF No. 162-2 at 2.)  Attached to the
motion to dismiss is the deposition transcript of RJDCF Litigation Coordinator Bruce Baenziger
who describes the attempt to have plaintiff attend the deposition.

Mr. Baenziger states that he, Lieutenant Spence, and Officers Taylor and Meza went to
plaintiff's cell.  (ECF 162-3 at 6.)  Even though plaintiff did not medically require a wheelchair,
they brought one to plaintiff's cell to transport him to the deposition.  (Id. at 7.)  Plaintiff looked
at the wheelchair through the food port.  (Id.)  Plaintiff told the officers that he would attempt to
get into the wheelchair.  (Id.)  The officers asked plaintiff to put his hands through the food port,
which is the standard process to be cuffed up prior to transport removal from the cell.  (Id.)

Plaintiff allowed the cuffs to be placed on his hands.  (Id.)  According to Mr. Baenziger,
from that point it is the inmate's responsibility to take the waist chain and wrap it around his
waist, and then present his back to the food port so that the waist chain can be locked and secured.
(Id.)  Plaintiff stated that he could not comply with that.  (Id.)  Plaintiff stated that he could not
stand in a way that would allow him to move the waist chain around his body and then present it
to be locked.  (Id. at 7-8.)  At that point, Mr. Baenziger and the officers closed the food port and
accepted that as a refusal.  (Id. at 8.)

In her declaration, defense counsel states that defendants incurred $4022.78 in costs and
attorneys' fees associated with this deposition and the motion for sanctions.  (ECF No. 162-2 at

3.)  In addition, to date, plaintiff has not paid defendants the $500 sanction previously awarded by the court.  (Id. at 4.)

In his opposition to the pending motion, plaintiff again alleges (without support) that he requires use of a wheelchair.  (ECF No. 172).  Plaintiff also alleges that he suffers from lower back and leg pain that impacts his ability to walk or stand.  (Id. at 3, 14.)  Plaintiff alleges that prison officials changed the wheelchair and cuffing procedures so that he could not attend his deposition.  (Id. at 7.)  Plaintiff requests that the court view videotapes from cameras in his housing unit that he claims will support this claim.  (Id.)  Plaintiff alleges that his medical records support his claims of disability.  (Id. at 8.)  Plaintiff requests that the court review his medical records.  (Id.)

In his opposition, plaintiff again alleges that he requires a wheelchair with removable side arms.  (Id. at 9.)  Plaintiff alleges that custody staff must be required to use cuffing procedures that allow plaintiff to remain in the wheelchair.  (Id.)  Plaintiff alleges that if prison officials do not provide him with these accommodations, there is nothing plaintiff can do.  (Id. at 10.)

Attached to plaintiff's opposition is a report of an MRI of plaintiff's lumbar spine from March 2011.  The report states that plaintiff has no spinal canal stenosis.  (Id. at 18.)  "There is a question of a small low-signal nodule within the posterior thecal sac at the level of L3."  (Id.)  Due to the small size of the nodule, very thin imaging would need to be performed in this area.  (Id.)  Plaintiff has very mild bulging at disc L4-5 and L5-S1 with no compromise of nerve roots with widely patent neural foramina.  (Id.)

Plaintiff has also attached a portion of a copy of a report from another MRI of plaintiff's lumbar spine.  (Id. at 21.)  This report is undated, although it occurred after the March 2011 report as it refers to this report and the small nodule seen.  This later report states that the vertebral discs all had normal height and there was uniform disc signal intensity as well.  (Id.)  The report found no disc herniation at L1-2, L2-3 and L3-4.  (Id.)  At L4-5, a 1-2 mm disc bulge posterity to the right was found that affected primarily epidural fat.  (Id.)  No definite nerve root impingement was seen.  (Id.)  At L5-S1, a 1-22 mm disc bulge posteriorly to the left side was seen.  (Id.)  This bulge also affected the epidural fat with no definite root impingement seen.  (Id.)  This report also

1  finds no canal stenosis.  (Id.)  A small 3 mm nodule was seen on the T2 sagittal images of the

2  spinal cord.  (Id.)

3       Also attached to plaintiff's opposition is a letter dated March 28, 2014, addressed to

4  plaintiff from the law firm Rosen, Bien, Galvan and Grunfeld.  (Id. at 25-26.)  This firm

5  represents prisoners in the Armstrong v. Brown class action brought against the California

6  Department of Corrections and Rehabilitation ("CDCR") on behalf of prisoners with disabilities.

7  This letter, signed by Michael Freedman, thanks plaintiff for meeting with Mr. Freedman on

8  February 27, 2014, to discuss the Armstrong lawsuit and disability accommodation at RJDCF.

9  (Id.)  This letter states that on February 28, 2014, the firm submitted a written request to staff at

10  RJDCF for plaintiff to be evaluated for DPO or DPW status, that staff transport plaintiff to "the

11  appointment" in a wheelchair, that staff permit plaintiff to transfer to and from the wheelchair in

12  his cell and that staff use cuffing procedures to allow plaintiff to sit in the wheelchair without

13  pain.  (Id.)  The letter asks plaintiff whether this evaluation occurred.  (Id.)

14       In support of his opposition, plaintiff also submitted his own declaration.  Plaintiff states

15  that when officers came to his cell on May 27, 2014, to take him to the deposition, they had a

16  wheelchair, but it did not have removable side arms.  (Id. at 32, 35.)  Plaintiff put his arms in the

17  cell door port to be placed in restraints, i.e. handcuffs.  (Id. at 32.)   Plaintiff alleges that at this

18  time, officers were supposed to open the cell door and place the wheelchair in his cell.  (Id. at 33.)

19  Plaintiff alleges that he removed his "secured" wrist and waited for the cell door to open, but it

20  did not.  (Id.)  Plaintiff alleges that he was ordered to stand up.  (Id.)  Plaintiff told the officers

21  that he could not stand or walk due to pain.  (Id.)  Plaintiff alleges that an officer uncuffed his

22  wrist and then the correctional officials left.  (Id.)

23       *Willfulness, Fault, or Bad Faith*

24       The undersigned first considers whether plaintiff's failure to attend his May 27, 2014

25  deposition was due to willfulness, fault or bad faith.

26       Plaintiff's version of the events of May 27, 2014 is not materially different from

27  defendants' version.  In other words, plaintiff did not attend his deposition because he claimed

28  that he could not comply with the cuffing procedures.  Plaintiff claims that he could not stand and

1    be shackled and then walk out of his cell to the wheelchair without suffering great pain.  Plaintiff

2    claims that he required the wheelchair to be in his cell so that he could sit and be shackled.

3        For the following reasons, the undersigned finds plaintiff's claim that he could not comply

4    with shackling procedures to be unsupported.  In support of their February 20, 2014 motion to

5    compel, defendants provided a form dated October 15, 2013, indicating that plaintiff does not

6    have a disability.  (ECF No. 143-2 at 9.)  This form, signed by a medical doctor, states that

7    plaintiff's disability is not confirmed.  (Id.)  This form is evidence that plaintiff does not have a

8    medical disability requiring special shackling procedures.

9        While the undersigned is not a medical expert, it does not appear that the medical records

10   attached to plaintiff's opposition to the pending motion support his claim of medical disability to

11   the point that he requires special shackling procedures.

12       The undersigned also observes that plaintiff has not submitted any evidence regarding

13   whether the DPO or DPW evaluation, referred to in Michael Freedman's March 28, 2014 letter,

14   occurred.  In this letter, Michael Freedman states that he met with plaintiff, presumably not in

15   plaintiff's cell.  Plaintiff does not explain how he got to the meeting with Mr. Freedman, i.e., was

16   he provided with a wheelchair and, in particular, special shackling procedures.

17       In the March 31, 2014 order granting defendants' motion to compel based on plaintiff's

18   failure to attend his first scheduled deposition, the undersigned specifically advised plaintiff that

19   he was required to honor all security concerns, including the wearing of shackles, at his

20   rescheduled deposition.  Under these circumstances, plaintiff's failure to attend his rescheduled

21   deposition, based on an unsupported claim that he required special shackling procedures due to an

22   alleged disability, was willful.

23       *Five Factors*

24       The undersigned considers the five part test for determining whether terminating sanctions

25   are appropriate.

26       First, the public's interest in expeditious resolution of litigation favors dismissal.  The

27   resolution of this action has been delayed for several months due to plaintiff's failure to attend his

28   deposition.  It is unclear whether plaintiff will ever attend his deposition.

1    Turning to the second factor, the court's need to manage its docket favors dismissal. The

2    court has spent considerable time addressing the issue of plaintiff's failure to attend his

3    depositions.  During this time, the undersigned issued other orders addressing plaintiff's motions

4    to compel.  (See ECF Nos. 151, 154, 160.)   Spending considerable time addressing motions filed

5    by a party who fails to attend his own deposition is not an efficient use of court resources.

6    Turning to the third factor, defendants have been prejudiced by plaintiff's failure to attend

7    his deposition.  Defense counsel has now made two trips from Sacramento to San Diego to

8    depose plaintiff.  Defendants have spent considerable money attempting to depose plaintiff and

9    litigating plaintiff's failure to attend.

10    The fourth factor, the public policy favoring disposition of cases on their merits, does not

11    favor dismissal.

12    Turning to the fifth factor, i.e., the availability of less drastic sanctions, the undersigned

13    previously tried lesser sanctions on plaintiff.  In the order granting defendants' February 20, 2014

14    motion to compel, the undersigned ordered plaintiff to pay $500 as a sanction for his failure to

15    attend his first deposition.  In the order issuing these sanctions, the undersigned ordered plaintiff

16    to honor all security concerns, including the wearing of shackles, at his re-noticed deposition.  In

17    this order, the undersigned further warned plaintiff that he would face dismissal if he again did

18    not attend his deposition.  Imposing monetary sanctions, which plaintiff has not paid, did not

19    motivate plaintiff to attend his re-noticed deposition.  For these reasons, the undersigned finds

20    that the less drastic sanctions are not available.

21    Balancing the five factors discussed above, the undersigned finds that dismissal of this

22    action is warranted.

23    Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss

24    (ECF No. 162) be granted.

25    These findings and recommendations are submitted to the United States District Judge

26    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

27    after being served with these findings and recommendations, any party may file written

28    objections with the court and serve a copy on all parties.  Such a document should be captioned

8

1    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

2    objections shall be filed and served within fourteen days after service of the objections.  The

3    parties are advised that failure to file objections within the specified time may waive the right to

4    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5    Dated:  July 21, 2014

6

7    As2462.osc

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9